1

2

3

4

5           UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
6                    AT TACOMA

7   K.S., K.K., H.M., T.K., J.H., S.B., S.C.,        CASE NO. 13-5926 RJB
    T.S., C.K., D.R., L.A., & M.L.,
8                                                    ORDER ON CROSS MOTIONS FOR
                    Plaintiffs,                      SUMMARY JUDGMENT
9
          v.
10
    CITY OF PUYALLUP, a municipal
11  corporation, POLICE CHIEF BRYAN
    JETER, LIEUTENANT EDWARD
12  SHANNON,

13                  Defendants.

14        This matter comes before the Court on the Defendants' Motion for Summary Judgment

15  on all claims (Dkt. 32) and Plaintiffs' Cross Motion for Summary Judgment (Dkt. 41).  The

16  Court has considered the pleadings filed regarding the motions, the physical materials filed with

17  the Clerk of the Court, and the remaining record.

18        This case arises from the City of Puyallup's use of surveillance cameras in two jail

19  holding cells where each of the Plaintiffs, who had been arrested for drunk driving, either

20  changed into jail clothing and/or used a toilet.  Dkt. 1.  The Plaintiffs' claims, after an initial

21  round of summary judgment motions, are that the use of these cameras:

22        1)  Violated their Fourteenth Amendment rights under the United States Constitution,

23        2)  Invaded their privacy contrary to Washington's common law, and

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 1

1   3) Was negligent.

2 Dkts. 1 and 27.

3   For the reasons set forth below, Defendants' motion to summarily dismiss Plaintiffs' claims

4 for violation of their federal constitutional rights should be denied as to the claim against the City

5 and granted as to the claim against the individual Defendants, and Plaintiffs' motion on the

6 federal claims denied.  Defendants' motion to summarily dismiss Plaintiffs' state law claims for

7 violation of privacy and for negligence should be denied.

8      **I.**  **FACTS AND PROCEDURAL HISTORY**

9 **A.  BACKGROUND FACTS**

10   Plaintiffs in this case are eleven women and one man arrested for drunk driving and taken to

11 the Puyallup, Washington City Jail.  Dkt. 1.  Each either used the toilet and/or changed clothes in

12 one of the two jail cells which had a stationary video camera.  *Id.*

13   To ensure that they are no longer a danger to themselves or the general public, the jail had

14 specific procedures in place regarding those arrested for drunk driving.  Dkt. 37, at 2.  They were

15 not released until another sober person arrived and was willing to sign forms that they would

16 take responsibility for the arrestee.  *Id.*  If no one arrived to take responsibility for them, the

17 arrestees were held in the jail until they could be safely released on their own recognizance.  *Id.*

18 All those arrested for drunk driving (and other crimes) had booking photographs taken in jail

19 clothing.  *Id.*, at 3.  If someone was there to take responsibility of the drunk driving arrestee, the

20 arrestee was allowed to change into a jail shirt only.  *Id.,* at 2.  If no one is waiting, arrestees

21 were required to change out of civilian clothing (underwear included) into jail clothing.  *Id.*  Two

22 of the Plaintiffs here, M.L. and C.K., spent the night at the jail.  *Id.*, at 3.

23

24

1   The jail is a 52 bed facility with security cameras throughout.  Dkt. 37, at 4.  There are two

2   holding cells in the booking area, each with windows that are covered with a black cover.  The

3   black window covers, which are moveable, have small slits through which officers may look into

4   the cell.  The toilets are visible from an oblique angle through the cell window.  The cameras in

5   the cells are wide angle, static, and view the toilet from the side.  They produce black-and-white

6   grainy images and the quality is exceedingly poor.  The cameras transmit their images to a bank

7   of monitors behind the booking desk.  Each monitor is broken into several frames showing feeds

8   from around the facility.  While at least one of the Plaintiffs was at the jail, there were monitors

9   over the holding cell doors, which also showed the feeds from inside the cell.

10   Attached to Plaintiffs' prior motion for summary judgment was a compact disc which

11   showed recordings of each Plaintiff either using the toilet or changing clothes in the holding cell.

12   Defendants' prior motion for summary judgment also had a compact disc which contained

13   recordings of some of the Plaintiffs in the holding cells.  It also showed – by way of a split

14   screen – recordings of the jail officers outside the cell at the same time.  (There are also cameras

15   recording the booking desk area.)  Other officers on duty can see who is watching the feeds from

16   the holding cell cameras.  Plaintiffs fail to point to any footage of an officer who actually glanced

17   at the monitors.  For some of the Plaintiffs, jail staff was not near the monitors at all while the

18   videos were taken.  Additional compact discs were also submitted for consideration.

19   For security reasons, the booking area of the jail did not have a public restroom for arrestees.

20   Dkt. 37.  The toilets available for arrestees were in the camera-equipped holding cells.  *Id*.

21   The jail provided a curtain behind which an arrestee may change clothes.  Dkt. 37.  There are

22   no cameras behind the curtain.  *Id*.  If an arrestee refused to change behind the curtain, as did

23   Plaintiff M.L. here, the officers would allow the arrestee to change in the holding cell.  *Id.*

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 3

1   Additionally, if the curtain was being used by another detainee, the officers would have the

2   arrestee change in the holding cell.  *Id.*

3   **B.  PROCEDURAL HISTORY**

4          On July 7, 2014, Plaintiffs' claims for voyeurism, for invasion of privacy (to the extent

5   the claim was based on violation of the Washington Public Records Act), and for violation of

6   RCW 10.79 (regarding the Washington state strip searches statute) were dismissed.  Dkt. 27.

7          This opinion will first consider the Defendants' motion to summarily dismiss Plaintiffs'

8   claims for violation of their federal constitutional rights and Plaintiffs motion for summary

9   judgment regarding their federal claims, and then will address whether the motion to summarily

10  dismiss Plaintiff's state law claims for invasion of privacy based on the common law and for

11  negligence.

12                          **II.        DISCUSSION**

13  **A.  MOTION FOR SUMMARY JUDGMENT STANDARD**

14         Summary judgment is proper only if the pleadings, the discovery and disclosure materials on

15  file, and any affidavits show that there is no genuine issue as to any material fact and that the

16  movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

17  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

18  showing on an essential element of a claim in the case on which the nonmoving party has the

19  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

20  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

21  for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

22  (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

23  metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a

24

material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B. CLAIM FOR VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS AGAINST CITY AND DEFENDANTS IN OFFICIAL CAPACITY**

"Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). "Pretrial detainees, who have not been convicted of any crimes," retain at least those constitutional rights of convicted prisoners. *Id.* However, prison inmates and pretrial detainees' constitutional rights are subject to "restrictions and limitations" based on "institutional needs and objectives." *Id.* "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.*, at 546. "There must be a mutual accommodation between

1    institutional needs and objectives and the provisions of the Constitution that are of general

2    application.  This principle applies equally to pretrial detainees and convicted prisoners. A

3    detainee simply does not possess the full range of freedoms of an unincarcerated individual." *Id.*

4    (*internal quotations and citations omitted*).  "Because 'prison officials must be free to take

5    appropriate action to ensure the safety of inmates and corrections personnel,' even those

6    restrictions that infringe upon 'a specific constitutional guarantee' must be 'evaluated in the light

7    of the central objective of prison administration, safeguarding institutional security.'"

8    *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964, 972 (9th Cir. 2010) (*quoting Bell*, at 547).

9        Prison administrators "should be accorded wide-ranging deference in the adoption and

10   execution of policies and practices that in their judgment are needed to preserve internal order

11   and discipline and to maintain institutional security. Such considerations are peculiarly within

12   the province and professional expertise of corrections officials, and, in the absence of substantial

13   evidence in the record to indicate that the officials have exaggerated their response to these

14   considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell,* at

15   547-48 (*internal quotations and citations omitted*).

16       When reviewing a detention facility's impingement on an inmate or detainee's constitutional

17   rights, in addition to being informed by the principles announced in *Bell*, courts consider whether

18   the challenged restriction was "reasonably related to legitimate penological interests" by

19   reviewing factors announced in *Turner v. Safley*, 482 U.S. 78, 89 (1987).  *Bull,* at 973. (*citing*

20   *Turner, at 89*).  When considering a prisoner or detainee's right to privacy, the relevant *Turner*

21   factors are:  1) the "existence of a valid, rational connection" between the prison regulation or

22   practice and the "legitimate governmental interest put forward to justify it;" 2) "the impact

23   accommodation of the asserted constitutional right will have on guards and other inmates, and on

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 6

the allocation of prison resources generally;"and 3) "the existence of obvious, easy alternatives as evidence that the regulation [or practice] is an exaggerated response to prison concerns." *Id.*

1. *Connection between Video Monitoring/Recording and Governmental Interest*?

The City offers the following as legitimate penological interests in having video surveillance in the jail's holding cells and in recording that video for later reference:  (1) preventing and detecting contraband; (2) monitoring the health and safety of the detainees; (3) protecting staff safety, and (4) efficiently using resources.  Dkt. 32.  Plaintiffs concede the "worthiness of these goals." Dkt. 41.  They argue that "[t]here is no rational connection between video recording detainees" and the offered penological purposes.  *Id.*

There are issues of fact as to whether the City has shown a valid, rational connection between the City's  general practice of video observation, recording and retaining the data from that observation, and having monitors outside the holding cell doors (in some of the Plaintiffs' cases),  and the City's penological goals.

2. *Impact of Accommodating Right of Privacy Asserted*?

The City has made a substantial showing as to the second *Turner* factor, "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally" as to the video monitoring.  The City points out that not being able to use cameras in the holding cells raises the likelihood of threats to both inmate and staff safety.  It has shown that not being able to use the cameras would require several more officers to staff the jail, (the jail can now be staffed by one person with the use of the video monitoring), having a significant impact on the allocation of the jail's resources.

However, there are issues of fact as to whether not being able to record the video feeds will impact guards, other inmates, and the jail's resources generally.  Further, there are issues of

1   fact as to whether not having monitors over the holding cell doors (which display all activity

2   inside the cell to anyone in the booking area) will impact guards, other inmates and the jail's

3   resources generally.

4        3.      *Exaggerated Response*?

5

6   The final *Turner* factor is whether there are "obvious, easy alternatives as evidence that

7   the regulation [or practice] is an exaggerated response to prison concerns." *Turner*, at 89. "The

8   burden is on the prisoner challenging the regulation, not on the prison officials, to show that

9   there are obvious, easy alternatives to the regulation." *Mauro v. Arpaio*, 188 F.3d 1054, 1062

10  (9th Cir. 1999).

11      Plaintiffs argue that as easy alternatives, the jail could blur the toilet area of the video

12  monitoring equipment and could require that detainees change into jail clothing behind a curtain.

13  Dkt. 41.  Plaintiffs argue that the jail is now using fingernail polish over a section of the camera

14  that shows the toilet and is now having people change behind the curtain in response to this

15  lawsuit. *Id.*  Plaintiffs have raised issues of fact as to whether the jail's practice of having

16  security cameras that record activity in the holding cells, and having monitors outside those cells

17  transmitting the activity within to anyone in the booking area, is an "exaggerated response" to its

18  legitimate penological interests. *Bull,* at 977.

19      4.      *Conclusion*

20  Defendants' motion to summarily dismiss Plaintiffs' federal constitutional claim (Dkt.

21  32) should be denied.  There are several issues of fact to be determined.

22  Further, Plaintiffs' motion for summary judgment (Dkt. 41) on the federal claim asserted

23  against the City and Defendants in their official capacities should be denied.  Plaintiffs fail to

24  show that there are no issues of fact and that they are entitled to a judgment as a matter of law on

their constitutional claim against the City and the individual Defendants acting in their official capacity.  Plaintiffs' motion for summary judgment on the federal constitutional claim against the City and the individual Defendants acting in their official capacity (Dkt. 41) should be denied.

**C.  CLAIM FOR VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS AGAINST DEFENDANTS IN INDIVIDUAL CAPACITY**

To the extent that Plaintiffs now make claims against the individual defendants in their individual capacities (as opposed to their official capacities), those claims should be dismissed. First, there are issues of fact as to whether Plaintiffs' constitutional rights have been violated as above.  Second, even if their constitutional rights had been violated, Defendants argue that they are entitled to qualified immunity.  In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case.  *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001).  While the sequence set forth in *Saucier* is often appropriate, it should no longer be regarded as mandatory.  *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009).

Turning to the second factor, Plaintiffs fail to show that their right to privacy in not being monitored and recorded by a video camera in a holding cell at a jail while using the restroom or changing clothes was clearly established at the time of these events.  Further, to the extent that Plaintiffs assert that the named Defendants are liable in their individual capacities for failing to train the other individuals at the jail, and that the failure to train the other employees of the jail resulted in their constitutional violations, Plaintiffs fail to show that the duty to train staff regarding the use of video cameras as used here was clearly established at the time of the events. Further, Plaintiffs also fail to show that any alleged lack of training caused any harm to

Plaintiffs.  Plaintiffs' claims against the Defendants in their individual capacities should be dismissed.

Defendants' motion to summarily dismiss Plaintiffs' federal claims (Dkt. 32) against the individual officers should be granted, Plaintiffs' motion (Dkt. 41) denied, and Plaintiffs' federal claims, to the extent that they are asserted against the individual defendants, should be dismissed.

**D.  STATE LAW CLAIMS**

1.  <u>Violation of Privacy</u>

Washington recognizes a claim for invasion of privacy under the common law.  *Reid v. Pierce County,* 136 Wash.2d 195, 206 (1998)(*citing* the Restatement (Second) of Torts).  The Restatement (Second) of Torts § 652B provides:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977).

Plaintiffs have pointed to issues of fact as to whether the jail's use of cameras in the holding cells here would be "highly offensive to a reasonable person."  The Defendants concede that the state law privacy claim is tied to the Constitutional claim and both must "rise and fall" together.  Dkt. 32, at 22.  There are issues of fact as to both claims.  The Defendants' motion to dismiss Plaintiffs' privacy claim (Dkt. 32) should be denied.

2.  <u>Negligence</u>

In order to prove actionable negligence in the state of Washington, "a plaintiff must establish the existence of a duty, a breach thereof, a resulting injury, and proximate causation between the breach and the resulting injury."  *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wash. 2d 468, 474, 951 P.2d 749, 752 (1998).

1   Defendants' motion to summarily dismiss the negligence claim (Dkt. 32) should be denied,

2   in part, and granted, in part.

3   Plaintiffs have pointed to issues of fact precluding summary judgment on this claim to the

4   extent that it is based on Plaintiffs' right to privacy.  Defendants acknowledge that Plaintiffs have

5   a privacy right and there are issues of fact as to whether that right was violated.  There are issues

6   of fact as to whether that violation caused Plaintiffs to be damaged.  This claim should not be

7   dismissed.

8   To the extent that Plaintiffs base their negligence claim on the Defendants' alleged failure

9   to train jail staff, Defendants' motion should be granted, and Plaintiffs' claim should be

10  dismissed.  Plaintiffs have failed to make any showing that their damages were proximately

11  caused by the alleged failure to train.  To the extent Plaintiffs move for summary judgment on

12  the negligent failure to train claim, their motion should be denied.

### III.   ORDER

14  It is **ORDERED** that:

15  (1) Defendants' Motion for Summary Judgment on all Claims (Dkt. 32) **IS**:

16  o   **DENIED** as to Plaintiffs' federal claims against the City and the individual

17      Defendants in their official capacities;

18  o   **GRANTED** as to Plaintiffs' federal claims against the individual Defendants

19      in their personal capacities;

20  o   **DENIED** as to Plaintiffs' state claim for violation of their right to privacy;

21  o   **DENIED**, in part, and **GRANTED**, in part**,** as to Plaintiffs' state law claim

22      for negligence: to the extent that the claim is based on Plaintiffs' right to

23      privacy, the motion is **DENIED**; to the extent that claim is based on an

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 11

1    alleged failure to train, the motion is **GRANTED** and the Plaintiffs'

2    negligence claim, based on the alleged failure to train, is **DISMISSED**.

3    (2) Plaintiffs' Motion for Summary Judgment (Dkt. 41) **IS DENIED.**

4    The Clerk is directed to send uncertified copies of this Order to all counsel of record and

5    to any party appearing *pro se* at said party's last known address.

6    Dated this 13th day of November, 2014.

7

8

9    ROBERT J. BRYAN
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 12